UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG MOONEY,

       Petitioner,

vs.

JAN TROMBLEY,

       Respondent.

_____/

Civil Action No.
05-CV-71329-DT

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER ACCEPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is presently before the court on a petition for a writ of habeas corpus. Respondent opposes the petition. The court referred the matter to Magistrate Judge Paul J. Komives who recommends that the petition be denied. Petitioner objects to the report and recommendation. The court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Petitioner was convicted of two counts of first degree criminal sexual conduct and one count of assault with a dangerous weapon, following a jury trial in the Livingston County Circuit Court. In July 2001 he was sentenced to concurrent terms of 13-20 years' imprisonment on the criminal sexual conduct convictions, and to a concurrent term of 1-4 years' imprisonment on the assault conviction.

Petitioner thereafter filed a motion for a new trial in the trial court, alleging ineffective assistance of counsel. Following an evidentiary hearing, the trial court denied the motion in October 2002. Petitioner appealed as of right to the Michigan Court of Appeals. The court of appeals found

no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Mooney*, No. 236424, 2003 WL 22112325 (Mich. Ct. App. Sept. 11, 2003) (per curiam). Petitioner, through counsel, filed the instant petition for a writ of habeas corpus in April 2005 based on four claims. The magistrate judge issued his report and recommendation (hereafter, "Report") in January 2007. Petitioner has filed objections (hereafter, "Objections"), which are analyzed below.

The facts of the case are sufficiently summarized in the magistrate judge's Report. In short, petitioner was convicted of raping his wife, Claudia Mooney, threatening her with a knife, and beating her.

Petitioner argues that: (1) he was denied due process because the state courts refused to consider post-trial evidence which supposedly indicated his wife had lied at trial and he was actually innocent; (2) he was deprived of the effective assistance of counsel; and (3) his conviction was tainted by prosecutorial misconduct. *See* Objections, 2-10.

The magistrate judge correctly analyzed each of petitioner's grounds for relief. Accordingly, the Court shall accept and adopt the report and recommendation and deny the petition.

## I. New Evidence

Petitioner claims that he was denied a fair trial when the trial court refused to consider his newly discovered evidence, consisting of the testimony of Michael York. According to York, he worked with the victim and had a sexual affair with her in 2000-2001. Objections, at 2-3. York also averred that the victim told him that she and her husband had engaged in consensual sex on the night in question. *See* Pet'r's Br., App. 5, Aff. of Michael York. Petitioner contends that this statement "flatly contradict[s the victim's] trial testimony and was consistent with the defense." Objections,

at 3.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ: "such evidence must bear upon the constitutionality of the applicant's detention." *Townsend v. Sain*, 372 U.S. 293, 317 (1963). Petitioner contends that this new evidence would "seriously undermine [Claudia's] testimony and would have produced a different result." Objections*, at 3. He believes that by impeaching the victim's credibility, he might have been able to sway the jury in his favor. However, even if York's testimony were true and the victim had had an affair with him and had also had consensual sex with petitioner earlier that night, neither piece of evidence is relevant to whether petitioner sexually assaulted the victim. Further, whether the victim had actually had an affair, or whether petitioner had just believed she had had an affair, is irrelevant to the charge of which petitioner was convicted. Therefore, this evidence does not bear upon the constitutionality of the applicant's detention.

Further, petitioner argues that the newly discovered evidence shows that the victim perjured herself. Petitioner maintains that he was denied due process because the presentation of perjured testimony at trial is a due process violation even if the falsity was unknown to the state at the time. The magistrate judge rejected this claim based on the Sixth Circuit's holding that, in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler,* 512 F.2d 221, 229 (6th Cir. 1975). *Accord King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Ford v. United States,* No. 94-1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994). The Supreme Court cases cited by petitioner at page 3 of his Objections are not to the contrary.

Petitioner has not shown any involvement by the prosecutor in the allegedly perjured testimony in this case. Accordingly, the Court concludes that petitioner is not entitled to habeas relief on this claim.

## II. Ineffective Assistance of Counsel

Petitioner next contends that he was deprived of the effective assistance of counsel due to four specific shortcomings of his trial attorney: (A) lack of time meeting with petitioner; (B) failure to call witnesses; (C) failure to investigate; and (D) fee structure. Petitioner claims that under *Strickland v. Washington,* 466 U.S. 668, 687 (1984), a court "must examine the alleged shortcomings in light of counsel's *overall* performance, and not assess each claim one by one as the [magistrate judge's] Report does." Objections, at 4 (emphasis in original).

Petitioner misconstrues *Strickland.* To "establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense." *Strickland* at 687 (internal quotations omitted). Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry [i.e., deficient performance and prejudice] if the defendant makes an insufficient showing on one." *Id.* at 697.

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994). It is the defendant's burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "A convicted defendant making a

claim of ineffective assistance must identify acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the circumstances, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Therefore, "[a]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. In this case, petitioner has not made such a showing.

### A. Lack of Time Spent with Petitioner

Petitioner claims that counsel did not spend an adequate amount of time on the case in order to fully understand it: "[Counsel] did not spend enough time with Petitioner to understand important facts of the case. As a consequence, his preparation and performance were both inadequate." Petitioner's Brief, at 30. This claim, however, only rests on the performance prong of the *Strickland* analysis. There is no precedent suggesting that "a minimum number of meetings between counsel and client prior to trial [are] necessary to prepare an attorney to provide effective assistance of counsel." *United States v. Olson,* 846 F.2d 1103, 1108 (7th Cir. 1988). Petitioner offers examples of when (i.e., only four times before March 15, 2001, which was just eleven days before trial), and under what conditions (i.e., no contact) he met with counsel, and suggests that because counsel did not spend *more* time with him, counsel could not understand the case, and was therefore ineffective in his assistance.

The issue is not the defendant's relationship with his lawyer as such. If counsel is a reasonably effective advocate, the Sixth Amendment standard is met, irrespective of his client's evaluation of his performance. *See United States v. Cronic,* 466 U.S. 648, 657 (1984). In *Cronic,* the Court held that "we attach no weight to either [defendant's] expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction." *Id.* While "petitioner contends that counsel was ineffective for failing to meet with him more often and for inadequately preparing for trial . . . petitioner does not explain any prejudice arising from counsel's alleged lack of meeting time and preparing." Report, at 18. Without any showing that counsel's acts or omissions prejudiced petitioner, petitioner's argument fails.

Petitioner has not demonstrated that counsel completely failed to subject the prosecution's case to meaningful adversarial testing. As the magistrate judge noted, "[c]ounsel met with petitioner, apparently conducted some investigation, and argued various matters on petitioner's behalf." Report, at 16; *see also Moss v. Hofbauer,* 286 F.3d 851, 859 (6th Cir. 2002). Additionally, petitioner has not overcome the strong presumption that "counsel's conduct does indeed fall within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* at 689 (internal citations omitted). Therefore, the fact that counsel spent 100 hours on petitioner's case, met with petitioner briefly, and allegedly failed to read eight pages of handwritten notes regarding the case given to him by petitioner (Petitioner's Brief, at 22), do not rise to the level necessary to overcome the presumption, and do not show prejudice under *Strickland*. Petitioner's claim of insufficient meeting time and preparation are not grounds for habeas relief.

### B. Failure to Call Witnesses

Petitioner contends that his trial counsel was ineffective for failing to call petitioner's parents

to testify concerning (1) the evidence of the victim's drinking on the night of the assault; (2) the e-mail and pornographic magazine evidence which supposedly shed light on the victim's sexual lifestyle; and (3) the victim's admission to having an affair, which would have contradicted her trial testimony. Report, at 21. Petitioner contends that counsel did not "take the time to grasp the significance of what [petitioner's parents] said" to him, and if he had, he would have called them as witnesses as they wanted. Objections, at 5. Petitioner argues that counsel's decision not to call his parents as witnesses was not a tactical decision as described by the magistrate judge (*see* Report, at 21), but instead was due to counsel's ignorance of the facts, his belief that petitioner's parents had nothing relevant to say, and that they would be discredited by the jury because of their relationship to defendant. Objections, at 5.

The Michigan Court of Appeals rejected petitioner's claim, concluding that "counsel's decision not to call petitioner's parents was a reasonable trial strategy, and that counsel's strategy did not deprive petitioner of a substantial defense." Report, at 21; *see also Mooney,* 2003 WL 22112325, at *9. Petitioner must show not only that counsel's strategy was unreasonable, but also that the appeals court's conclusion that counsel's strategy was not unreasonable was itself unreasonable. Report, at 22.

Petitioner contends that had his parents testified to the victim's drinking and to her admission about having an affair, as well as to evidence such as the broken glass and a cut on petitioner's back, they would have effectively destroyed her credibility, as she testified otherwise, and this could have significantly affected the outcome of the trial. Objections, at 5-7. The parents allegedly also would have testified that there was a 2/3 empty bottle of vodka at the marital home. Petitioner contends that the victim typically drinks vodka while he usually drinks whiskey. Such evidence allegedly would have demonstrated that the victim drank 2/3 of a bottle of vodka on the night of the assault.

Petitioner extrapolates even further, contending that "if it can be shown that Claudia was not just drinking but very drunk that night, there likely would have been a different result" in the trial. Objections, at 7.

In order to show that counsel's decision not to call the parents as witnesses actually prejudiced petitioner, he must show that counsel's error was so serious as to deprive defendant of a fair trial, a trial whose result is reliable. *See Strickland,* at 687. Petitioner has not done so. Further, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a *tactical decision*." *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987) (emphasis added). Therefore, the Court concludes that petitioner is not entitled to habeas relief on this claim.

### C. Failure to Investigate

Petitioner claims that counsel was ineffective for failing to investigate (1) the marital home to look for evidence such as sexual devices, photographs, and pornographic magazines, and (2) the source of the blood on the knife. Petitioner contends that counsel's failure to conduct further investigation was not a strategic choice, but instead was based on counsel's assumption that such an investigation would not yield any relevant evidence, and this amounts to ineffective assistance, supporting a claim for habeas relief. Objections, at 8. The Court concludes that the Michigan Court of Appeals's rejection of this claim was reasonable.

Counsel has a duty, under *Strickland,* to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland* at 691. Counsel's "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable [on claim of ineffective assistance]; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional

judgments support limitations on investigation." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003). In any effective assistance case, counsel's "decision not to investigate must be directly assessed for reasonableness in all circumstances, applying heavy measure of deference to counsel's judgments." *Id.* at 521-522. *See also Strickland* at 690-691.

### (1) Evidence in the Marital Home

Petitioner specifically contends that the fact there was a large pile of "girlie" magazines on the floor of his house is evidence which would have corroborated petitioner's testimony that both he and his wife viewed such magazines as part of their sex life, and that the victim purchased these magazines. Objections, at 8-9. In addition, petitioner argues that the printed emails found in the marital home apparently "could have been viewed by the jury as corroborative of petitioner's testimony that [the victim] used [the weapon] on herself [on the night in question]." Objections, at 9. However, both of petitioner's claims fail because neither piece of evidence would have contributed to petitioner's defense, and so their omission at trial did not prejudice petitioner.

Contrary to petitioner's argument, "the mere existence of the magazines in the home does not provide any evidence showing whose magazines they were, nor whether the victim viewed them of her own volition." Report, at 19. More importantly, though, is the fact that "whether petitioner and the victim sometimes viewed pornographic magazines or used the sex toy together would not in any way have resolved the principal issue in the case: whether petitioner's use of the sex toy on the night of the assault was consensual or was an act of sexual assault." Report, at 19. The fact that there were pornographic magazines and a sex toy (which the victim admitted she and petitioner sometimes used together) in the marital home is not evidence relating to the assault. Therefore, there is no reasonable probability that, had this evidence been presented during trial, the result would have been different.

### (2) Source of Blood on the Knife

Petitioner contends that counsel was ineffective for failing to have the blood tested to see whose blood it was, and to have the knife, which petitioner was charged with using during the assault, tested for fingerprints. Report, at 20. Counsel testified in a post-trial proceeding that he "declined to have the knife tested because it would be better to argue reasonable doubt based on the state's failure to investigate rather than risk an adverse result from the testimony." Report, at 20. Evidence of either petitioner's or the victim's blood or fingerprints on the knife could be explained by the fact that the petitioner claimed to be holding the knife while threatening to commit suicide, and also having a cut on his wrist, and that the victim lived at the home with access to the knife in the kitchen, and she apparently struggled over the knife with petitioner. "[T]he evidence would not have answered, or provided any evidence to answer, the question of whether petitioner physically and sexually assaulted the victim." Report, at 20. Therefore, even if the knife had been tested and the testing had shown that the knife had petitioner's blood on it, as he contended, there is not a reasonable probability that the result of the proceeding would have been different. An alleged error by counsel does not warrant habeas relief if the error had no effect on the judgment. *Strickland* at 691.

### D. Fee Structure

Petitioner argues that the fact his appointed trial counsel was paid less than $6.00 per hour to work on his case amounted to a constructive absence of counsel and was a principal factor in causing counsel's ineffectiveness. Objections, at 4. He does not offer any support for this claim in his Objections, but contends that the magistrate judge's Report failed to consider the fee structure as a factor in assessing counsel's performance. Objections, at 4.

For the reasons discussed above, petitioner has failed to demonstrate that his trial counsel

was ineffective.  Therefore, whatever fee his counsel was paid is irrelevant.

### III. Prosecutorial Misconduct

Finally, petitioner contends that the prosecutor deprived him of a fair trial by telling the jury, in effect, that "it would be worse for a guilty person to be acquitted than an innocent to be convicted, precisely the reverse of the law."  Objections, at 9.  The prosecutor's statement at trial to which petitioner objects is as follows:

> Yes, falsely accusing someone would be a very serious situation.  But there's one thing that Mr. Gatesman [defense counsel] didn't point out.  Number one, there's no evidence of a false accusation in this case.  And you know what would be fair [sic] worse in this situation, ladies and gentlemen?  Having Claudia Mooney being assaulted and him getting away with it.  That would be fair [sic] worse.

Trial Tr., Vol. IV, at 143.

The magistrate judge correctly noted that "[f]or habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was undesirable or even universally condemned."  Report, at 27 (internal citations omitted).  Indeed, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).  Therefore, petitioner must show that the prosecutor's conduct deprived him of a fair trial.

The magistrate judge indicated that the prosecutor's comment was a "fair response to defense counsel's closing argument, in which counsel stated that there was '[o]ne thing worse than what happened to Miss Mooney on December 15th that could be worse than being violated in your home in a sexual manner.  And that would be to be falsely accused of it.'  Trial Tr., Vol. IV, at 135."  Report, at 31.  One factor to be weighed in evaluating claims of prosecutorial misconduct is whether

the prosecutor's statement was "invited by or was responsive to the [closing argument] of the defense." *See Darden v. Wainwright,* 477 U.S. 168, 182 (1986). In light of this, the Court agrees with the magistrate judge's statement that the prosecutor's statement "did not misstate the law, suggest that petitioner had the duty to come forward with any evidence, or otherwise imply that petitioner bore the burden of proving his innocence." Report, at 31. The prosecutor's statement was not so egregious as to deny petitioner a fair trial. Accordingly, the Court concludes that petitioner is not entitled to habeas relief on the claim of prosecutorial misconduct. Accordingly,

IT IS SO ORDERED that petitioner's objections to the judge's report and recommendation are overruled.

IT IS FURTHER ORDERED that the judge's report and recommendation is accepted and adopted as the findings and conclusions of the court.

IT IS FURTHER ORDERED that this petition is denied.

_____s/Bernard A. Friedman
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: August 13, 2007
       Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman